IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MATTHEW H.**[1]

       Plaintiff,

   v.

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

       Defendant.

Civ. No. 3:22-cv-00580-CL

**OPINION AND ORDER**

---

**CLARKE**, United States Magistrate Judge.

Plaintiff Matthew H. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 4. For the reasons provided below, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on August 9, 2018, with an alleged onset date of May 28, 2016. Tr. 213[2]. Plaintiff also filed an application for SSI on November 9, 2018, with an alleged onset date of May 28, 2016. Tr. 215. Plaintiff's applications were denied on August 7, 2018, and again upon reconsideration on October 8, 2018. Tr. 81, 99, 119-20, 137-38. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 162-63, and a hearing was held on September 17, 2019. Tr. 28. On October 16, 2019, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. However, Plaintiff timely appealed and, upon stipulation of the parties, the decision was remanded for further proceedings in accordance with the order of remand. Tr. 1469-70. A second hearing was held on December 2, 2021. Tr. 1417. At the hearing, Plaintiff requested a closed period from the alleged onset date of May 28, 2016, to April 1, 2021. Tr. 1434, 1558. On January 27, 2022, the ALJ issued a decision once again finding Plaintiff not disabled within the meaning of the Act. Tr. 1410. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 19 years old on the alleged onset date. Tr. 51. He has a high school diploma and has no past relevant work. Tr. 243, 1409. Plaintiff alleges disability based on a broken back, ADD, depression, PTSD, arthritis in previously shattered ankle, arthritis in previously broken knee, anxiety, and social anxiety. Tr. 242.

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

5.  Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.  The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-

related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

See also Bustamante v. Massanari, 262 F.3d 949, 954–55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954–55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 28, 2016. Tr. 1402. At step two, the ALJ found that Plaintiff had the following severe impairments: severe degenerative disc disease, status post sternum fracture and compression fractures of the spine, status post right ankle and tibia fractures with open reduction internal fixation surgical repair, left shoulder sprain, attention deficit hyperactivity disorder (ADHD), learning disorder, and trauma disorder. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 1403. The ALJ found that Plaintiff had the RFC to perform light work with the following exertional and non-exertional limitations:

> [Plaintiff] stand and walk for a combined total of two hours and sit
> for six hours. He can occasionally use foot controls, occasionally
> climb ramps and stairs, and never climb ladders, ropes or scaffolds.
> He can occasionally balance, stoop, kneel, crouch, and crawl. He
> can occasionally reach overhead, and he can frequently reach in all
> other directions. He should not have concentrated exposure to
> vibration or hazards. He is limited to simple, routine work, in a
> workplace with no more than occasional workplace changes.

Tr. 1404. At step four, the ALJ made no finding regarding Plaintiff's past relevant work. Tr. 1409. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite his impairments. Tr. 1409-10. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 1410.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means

'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff asserts that remand is warranted for the following reasons: (1) the ALJ erred in their assessment of the medical opinion evidence; (2) the ALJ erred in their assessment of the Plaintiff's subjective symptom testimony; and (3) the ALJ erred in their assessment of the Plaintiff's RFC. For the reasons that follow, the Court concludes that the ALJ did not err in their assessment, and the Commissioner's decision is affirmed.

**I.    The ALJ properly evaluated and credited the medical opinions.**

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018.  Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

### A.  Dr. Abdolali Elmi, M.D.

Dr. Elmi provided medical expert testimony at Plaintiff's second hearing. Tr. 1424–29. In his testimony, Dr. Elmi stated that, due to his review of Plaintiff's injuries, Plaintiff should be limited to the category of "light duty," where he could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk for a combined total of two hours in an eight hour workday, occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolding, occasionally crouch and crawl, with no limitations to reaching in any direction, and with no limitations in handling, fingering, and feeling. Tr. 1426. The ALJ determined that the medical opinion testimony was persuasive and incorporated all of the medical expert's testimony into the RFC. Tr. 1404, 1407.

Plaintiff contends that the ALJ erred in their assessment of Dr. Elmi's opinion because Dr. Elmi "specifically stated that the very reason his RFC limited Claimant to standing and walking two hours was because he did *not* include Claimant's progressive knee and ankle limitations." Pl.'s Op. Br. 12 citing Tr. 1426-27, ECF 14 (emphasis in original).

Plaintiff is incorrect, and the ALJ did not err. In fact, according to Dr. Elmi, "[Plaintiff] has had irregularity on the MRI of the ankle. That's indicating most likely progressive post-traumatic arthritic condition. Same goes with his right knee . . . which progressively will go to degenerative or post-traumatic arthritis [and] was the main reason for my limitation to two hours collectively standing and walking." Tr. 1427. Given the unambiguous testimony of Dr. Elmi, the Court concludes the ALJ did not err in their assessment of Dr. Elmi's medical opinion.

### B. Dr. Mike Phelps, M.D.

Dr. Phelps provided a medical opinion questionnaire assessing Plaintiff's work place limitations based on his impairments. Tr. 1161–65. In the questionnaire, Dr. Phelps stated that Plaintiff can stand and walk for less than two hours in an eight hour workday, can sit for less than two hours in an eight hour workday, must periodically change positions between sitting and standing after one hour, that he must walk around for five minutes every thirty minutes, that he must be able to shift at will from sitting or standing and walking, and that he will need to lie down at unpredictable intervals every two hours. Tr. 1163. Dr. Phelps' limitations were based on subjectivity. *Id.* Dr. Phelps also stated Plaintiff could rarely twist, stoop, crouch, climb stairs, climb ladders, and that he could rarely lift and carry 20 pounds, 10 pounds, less than 10 pounds, and could never lift and carry 50 pounds. Tr. 1164. Dr. Phelps' limitations were based on subjectivity. Tr. 1164. Dr. Phelps also stated Plaintiff would need to miss four or more days of work a month. Tr. 1165. The ALJ determined that Dr. Phelps' medical opinion was unpersuasive because it was inconsistent with his own treatment records and the medical opinion of Dr. Elmi. Tr. 1408.

Plaintiff contends that the ALJ failed to provide substantial evidence to support their interpretation of Dr. Phelps' medical opinion.

Plaintiff is incorrect, and the ALJ did not err. Dr. Phelps provided medical records showing he saw Plaintiff from October 2018 to August 2019. Tr. 1170–80. In that time, Dr. Phelps' medical records contain only a single assessment of Plaintiff's physical condition made on the date Plaintiff first established care on October 2, 2018. Tr. 1179. In his assessment, Dr. Phelps noted that Plaintiff broke his back on November 11, 2017, broke his sternum and four vertebrae, and that he shattered his ankle and broke his knee twice in 2016. *Id.* Despite these injuries, Dr. Phelps also noted that Plaintiff had normal gait and station. *Id.* Comparing Dr. Phelps' questionnaire to his medical records shows an inconsistency between the extreme limitations he placed on Plaintiff's physical abilities and the absence of any objective medical findings to support those limitations. Tr. 1161–65, 1170–80. Inconsistency with medical records and inadequate support by clinical findings serve as specific, legitimate reasons for rejecting a physician's opinion. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). In light of this evidence, the Court concludes that the ALJ's interpretation of the record was reasonable, and the Court will not second guess the ALJ's findings. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

### C. Dr. Daniel Scharf, Ph.D.

Dr. Scharf provided an intellectual assessment of Plaintiff, including a diagnostic interview, mental status examination, and administration of psychological testing with a review of Plaintiff's medical records. Tr. 1153–57. Dr. Scharf's report discussed Plaintiff's history of ADHD, his PTSD due to his first injury in 2016, where he broke his knee and ankle, and his

second injury in 2017 where he broke his back. Tr. 1154–55. Dr. Scharf also observed that

Plaintiff was underreporting his pain, that he presented appropriately and participated adequately

during the interview. Tr. 1153, 1155. During testing, he was able to understand and remember

instructions, named states bordering Oregon, recited the days of the week backwards with one

uncorrected error, and recalled four of four objects immediately in one presentation and four of

four objects in another after a five-minute delay. Tr. 1155. Testing results showed that Plaintiff's

full-scale IQ was in the low average range, visual-spatial skills in the average range, superior

range in the Visual Puzzles subtest, and the borderline range on the Working Memory Index. Tr.

1156. Dr. Scharf concluded that Plaintiff had mild to moderate difficulties sustaining attention

and at times appeared distracted by pain. Tr. 1157. He also concluded that Plaintiff would likely

have difficulties with persistence in his attention after 1 to 2 hours and could engage in

appropriate social interaction. *Id.*

　　Plaintiff argues that due to the persistence limitations the Plaintiff is incapable of

sustaining full time work. Pl.'s Op. Br. 16, ECF 14. Plaintiff also argues that the Plaintiff was

only capable of finding a job with the aid of vocational rehabilitation services. *Id.*

　　Plaintiff's arguments are not well-founded. Dr. Scharf's report stated that Plaintiff would

likely have difficulties in persistence after one to two hours, not that it would not be possible for

Plaintiff to persist. Tr. 1157. Furthermore, at the hearing, Plaintiff testified to going back to work

and earning enough to constitute substantial gainful activity. Tr. 1432. Plaintiff's argument that

he was only able to find work due to the rehabilitation program was not something to which

Plaintiff actually testified. When asked about his current job, Plaintiff testified he found the job

through a rehabilitation service through his old high school and that it was the first job to which

he applied. Tr. 1433. At no point did Plaintiff testify he was only able to find work because of

the program. Considering that Plaintiff was able to return to work, the Court will not second guess the ALJ's finding.

### D.  Drs. Roy Brown, M.D., Martin Kehrli, M.D., Scott Kaper, Ph.D., William Nisbet, M.D., Sergiy Barsukov, Psy.D.

The state agency doctors above provided opinions limiting Plaintiff to a less than light range of work, assessing him as only being able to stand or walk for a total of two hours during an eight-hour workday, occasionally lifting or carrying up to twenty pounds, frequently lifting or carrying ten pounds, sitting for six hours in an eight-hour day, limited pushing and pulling in lower extremities with occasional use of foot pedals. Tr. 76, 94–95, 115, 133. They also limited Plaintiff to frequently climbing ramps and stairs, occasionally climbing ladders, ropes, and scaffolds, frequently having to balance, and occasionally stooping, kneeling, crouching, and crawling. Tr. 76–77, 94–95, 115, 133. For his mental health assessment, Plaintiff was moderately limited his ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, Tr. 78–79, 96–97, 117, 135. The ALJ found these opinions persuasive and accounted for each finding in the RFC. Tr. 1404, 1408.

Plaintiff argues the ALJ failed to properly evaluate the agency opinions because the ALJ's analysis is undermined by the opinions of Dr. Elmi, Dr. Phelps, and Dr. Scharf.

Plaintiff is incorrect. As discussed above, the ALJ's findings with respect to Drs. Elmi, Phelps, and Scharf are reasonable interpretations of the record. The Plaintiff has not identified any existing conflicts in the record that need resolution, and the ALJ accounted for all of the Plaintiff's limitations in the RFC. Therefore, the Court finds the ALJ properly evaluated the agency doctors' opinions.

## II.    Subjective Symptom Testimony

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 1405. Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony, specifically that the ALJ did not provide specific, clear and convincing reasons supported by substantial evidence in the record to discredit Plaintiff's testimony. Pl.'s Br. 20–26, ECF No. 14.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified that due to chronic pain from injuries to his knee and ankle in a bike accident in 2016, another injury to his knee, and then another bike accident in 2017 where he broke his back, he is unable to sustain full time work. Tr. 37–43. In his function report, Plaintiff testified that he cannot sit, stand, or walk for more than thirty minutes before he has to lie down for a few hours. Tr. 263. Plaintiff also testified that he cannot bend, squat, or sit at a desk. *Id.*

Here, the ALJ rejected Plaintiff's subject symptom testimony because it was inconsistent with medical records, and he improved with treatment. Tr. 1407.

### A. Medical Record

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 *(S.S.A. Oct. 25, 2017).*

An independent review of the record establishes that the ALJ properly considered the objective medical record in discounting the Plaintiff's subjective symptom testimony. Plaintiff suffered right knee, tibia, and ankle injuries in a May 2016 dirt bike accident and had open reduction internal fixation surgery. Tr. 478–484. Records show that Plaintiff plateaued in functionality in November 2016 with persistent knee and ankle pain due to hardware implementation used for surgery. Tr. 535. After having the hardware removed from his knee and ankle, his ankle was stable with no instability, although he did trip and contuse his knee in January 2017. Tr. 627. Imaging at this point also showed no evidence of arthritis in either joint and, on physical examination, there was no significant instability that could be discerned. *Id.* Plaintiff also reported he was getting better. *Id.* In April 2017, Plaintiff's knee pain had largely resolved and, while he still had some pain in his ankle, his ankle was stable. Tr. 626. In May 2017, due to the persistent ankle pain, imaging was done showing Plaintiff had osteochondral lesion in the location of his pain which was treated arthroscopically with debridement. Tr. 623–24. In October 2017, Plaintiff stated he had received a work release from his doctors and was looking forward to getting back to work at his previous job as a janitor. Tr. 633. In a November 2017 follow-up, Plaintiff walked without any limp and denied any pain symptoms to the ankle other than some mild tenderness. Tr. 622. Before he could start work, however, Plaintiff had a second dirt bike accident on November 11, 2017. Tr. 679–681.

In the November 11, 2017, dirt bike accident, Plaintiff sustained an L2 compression fracture, slight L1, T12, and T11 compression fractures, and a sternal fracture and contusions. Tr. 679–80. At a follow up in January 2018, Plaintiff reported still having severe back pain without any radiating lower extremity symptoms. Tr. 676. While he did have some soft tissue swelling, Plaintiff was able to ambulate without assistance, tiptoe and heel walk and do a partial single leg

dip while standing except on his right side, and sensation in his lower extremities was intact. *Id.*
New x-rays were taken, and his injuries were unchanged. *Id.* Plaintiff was told he could pursue
activities as tolerated and to try limiting any bending and twisting activities as much as possible.
Tr. 677. On March 27, 2018, Plaintiff reported that he has been attending physical therapy, his
back pain has been gradually improving, and he was improving the length of time he could walk.
Tr. 684. Plaintiff also reported taking Tylenol to manage his pain. *Id.* In April 2019, Plaintiff
reportedly could stand for one hour with little difficulty, sit for one hour with no difficulty, run
on even ground with no difficulty, squat with moderate difficulty, and walk a mile with moderate
difficulty. Tr. 1243. Plaintiff also reported on December 2, 2021, that he had been working for at
least six months. Tr. 1432. As such, the medical record provided clear and convincing reasons to
reject Plaintiff's testimony.

### B. Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and
persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that
can be controlled effectively with medication are not disabling for the purpose of determining
eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.
2006). Symptom improvement, however, must be weighed within the context of an "overall
diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester
v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not
inconsistent with disability.").

As noted above, Plaintiff testified to being unable to work due to ankle, knee, and back
injuries. Plaintiff's records show consistent improvement culminating in Plaintiff actually

returning to work constituting successful gainful employment. The ALJ therefore did not err in
discounting Plaintiff's subjective symptom testimony.

**III.    The Plaintiff's RFC was properly assessed.**

Plaintiff argues that the ALJ did not properly assess Plaintiff's past relevant work at step
four of the sequential process, and that not all of Plaintiff's medically determinable impairments
were included in the ALJ's RFC at step five. Pl.'s Op. Br. 26–27, ECF 14.

At step four, the ALJ made no determination regarding Plaintiff's past relevant work,
applying the expedited process. Tr. 1409; *see* 20 C.F.R. §§ 404.1520(h), 416.920(h) (explaining
the step four expedited process). Plaintiff claims the ALJ erred because of the lack of an
evaluation, but Plaintiff is mistaken. Even if enough evidence existed to make a determination
regarding Plaintiff's past relevant work, such error is harmless in light of the ALJ's alternative
finding at step five. *See Tommasetti*, 533 F.3d at 1042. At step five, the ALJ concluded that
Plaintiff could perform other work in the national economy that existed in significant numbers.
Tr. 1409–10; *see Robbins*, 466 F.3d at 885 (holding that error that is inconsequential to the
ultimate nondisability determination is harmless error). Using the vocational expert's testimony,
the ALJ determined that Plaintiff could work as a router (DOT 222.587-038, approx.. 76,000
jobs in the national economy), a marker (DOT 209.587-034, approx.. 85,000 jobs in the national
economy), and a bench assembler (DOT 706.684-022, approx. 100,000 jobs in the national
economy). Tr. 1410. At Plaintiff's first hearing, a vocational expert also testified Plaintiff could
not do his past work as a janitor because it had an exertional requirement above Plaintiff's
determined limits. Tr. 44. Therefore, the ALJ did not err at step four. Because Plaintiff's
arguments regarding the step five determination are recitations of arguments addressed above
relating to medical opinion and subjective symptom testimony, and because Plaintiff does not

provide argument as to what medically determinable impairments were not, but should have

been, included in Plaintiff's RFC, the Court finds the ALJ did not err at step five. The ALJ's

decision is affirmed.

### ORDER

The ALJ did not err. The decision is AFFIRMED.

It is so ORDERED and DATED this 25 day of July, 2023.

MARK D. CLARKE
United States Magistrate Judge